IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CRYSTAL DAWN BREWINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-0339-CV-W-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in May 1983, has a high school education, and has prior work experience as a patient service representative, a cook in a hospital, a waitress, and a retail clerk. In August 2009, Plaintiff was involved in an accident while riding on an ATV and suffered a broken ankle, a broken clavicle, head trauma, and an injury to her eye.

Plaintiff does not challenge many of the ALJ's findings and conclusions. The ALJ found Plaintiff suffered from the following severe impairments: residual effects of fractures to her right ankle and right clavicle, third nerve palsy in her right eye, depression and anxiety. R. at 19. He also found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the added restriction that she was limited to simple, routine and repetitive tasks and was further limited to interaction with the public and coworkers that was no greater than "superficial in nature." Finally, he found Plaintiff needed to avoid hazards such as dangerous machinery and unprotected heights. R. at 23. He made these findings after considering the medical

records, including: records from those treating her anxiety and depression, the October 2009 report from Dr. Brad Steinle (who was involved in Plaintiff's treatment and rehabilitation following the accident), R. at 408-09, and the September 2011 Medical Source Statement ("MSS") from her treating physician, Dr. George Windsor. As will be discussed below, the ALJ accorded Dr. Windsor's MSS "great weight" but not "controlling weight." R. at 27-28. Indeed, the ALJ's RFC finding is very similar to Dr. Windsor's MSS: Dr. Windsor indicates Plaintiff can lift up to ten pounds occasionally and less than ten pounds frequently, can occasionally kneel, crouch, crawl, and stoop, has no limitations on her ability to reach or handle, can stand or walk two hours in a workday and has no limitations on her ability to sit (although she would need to be able to alternate between sitting and standing. R. at 695-99.

Where Plaintiff parts company with the ALJ's findings is with the issue of headaches. Plaintiff testified that she suffers from chronic headaches that became more serious after the accident. Plaintiff described the worst of the headaches as a throbbing pain that would make her nauseous, with the symptoms lasting for four to seven days, and otherwise she experienced "mild" headaches daily. R. at 49. However, the ALJ did not find the headaches to be severe. Plaintiff also contends the ALJ should have afforded controlling weight to Dr. Windsor's MSS, particularly the portion that opined Plaintiff would be absent from work more than four days per months.

In contrast to Plaintiff's other medical issues, the information about Plaintiff's headaches is astonishingly sparse. As stated, the accident occurred in August 2009, but the first mention of chronic headaches appears in July 2011. On July 11, she reported experiencing a "headache for a week" and that over the counter medication did not help. She was prescribed Diltiazem (which is normally used to treat hypertension and angina). R. at 667. She returned on July 26 and reported (as stated in her Brief) "that the new medication for the headaches appears to be working; but that she has concerns over how long it will work for her." Plaintiff's Brief at 23 (citing R. at 667). Dr. Windsor's notes from August 9 and August 19 address a variety of subjects; headaches are mentioned, but little is said about treatment (beyond the fact that Prozac was also helping with her headaches). R. at 665. Plaintiff went to the Neurology Clinic at University Hospital on August 1 and saw Dr. Munish Goyal. Other than the

2

aforementioned third nerve palsy in her right eye her neurological examination was "unremarkable." Dr. Goyal noted Plaintiff was on Diltiazem "for preventative measures" and recommended that she continue that treatment for six to eight weeks. R. at 645-48.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

For purposes of step two of the five-step sequential process for analyzing disability claims, a medical ailment or condition is not severe if it imposes no more than a minimal impact on the claimant's ability to work. E.g., Page v. Astrue, 484 F.3d 1040, 1043-44 (8th Cir. 2007). Here, the Record demonstrates (at best) that Plaintiff experienced a serious headache for a matter of weeks. Setting aside the fact there is no evidence the headaches existed, or were expected to exist, for more than a year,[1] the Record demonstrates Plaintiff obtained relief once Diltiazem was prescribed;

---

[1]The ALJ issued his decision on October 28, 2011 – or, approximately three months after Plaintiff saw the neurologist. If her headaches continued at the severity level she described, she could presumably file another application pursuant to Title XVI.

3

Plaintiff's only concern was whether the relief would last for an extended period of time, but there is no documentation demonstrating the problem recurred. Moreover, nothing in the Record demonstrates the headaches – once treated – limited any work-related activities. Given the medical records (which include Plaintiff's statement that the headaches were alleviated), the ALJ was justified in rejecting Plaintiff's subjective testimony.

B.

In deciding not to afford Dr. Windsor's opinion controlling weight, the ALJ noted that while Dr. Windsor had treated Plaintiff for over a decade, there were "long gaps" in that history and Dr. Windsor had based his decision in part on matters outside his area of expertise (such as mental health issues and visual impairments) and conditions that were either not severe or were remedied with treatment (headaches and, again, visual impairments). The ALJ also noted that with respect to the serious injuries Plaintiff incurred in the ATV accident, he was deferring to another treating physician (Dr. Steinle). R. at 27-28.

Plaintiff faults the ALJ for deferring to Dr. Steinle's opinion in lieu of Dr. Windsor's. However, as intimated by the ALJ (and as confirmed in the records) the doctors really address different aspects of Plaintiff's condition. Dr. Steinle offered opinions regarding Plaintiff's condition after the ATV accident, particularly with respect to her ankle and clavicle. While the aftereffects of those injuries limit Plaintiff's abilities, those limitations are fairly incorporated in the ALJ's RFC. As the Court noted earlier, the RFC mirrors Dr. Windsor's MSS in these areas almost exactly. Plaintiff suffers from third nerve palsy in her right eye, but other medical records caused the ALJ to find Plaintiff has 20/30 vision in that eye and treatment has proven satisfactory – conclusions that are not challenged by Plaintiff in this proceeding. Similarly, the ALJ made findings regarding Plaintiff's depression and anxiety – based on reports from the doctors treating those conditions – that Plaintiff does not challenge. Thus, when Dr. Windsor opined Plaintiff is unable to work because of medical conditions for which he is

4

not providing treatment – and thus is not the treating physician – there is no obligation for the ALJ to defer to his opinion.

### III.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith  
ORTRIE D. SMITH, SENIOR JUDGE  
UNITED STATES DISTRICT COURT

DATE: March 13, 2014